## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANJANIE PERSAUD** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CASE NO: 07-CV-346** |
| | | **Judge Richard W. Roberts** |
| **THE ST. PAUL TRAVELERS** | * | |
| **COMPANIES, INC. et al.** | | |
| | * | |
| **Defendants** | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANTS' MOTION TO DISMISS,
### OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative Fed. R. Civ. P. 56[1], Defendants, The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, The Standard Fire Insurance Company, and The Automobile Insurance Company of Hartford Connecticut[2], through counsel, moves for dismissal, or in the alternative for summary judgment, in its favor based upon expiration of limitations, and states as follows:

1.      This case arises from a fire at Plaintiff's rental property located at 760 Rock Creek Church Road, NW, Washington DC on July 5, 2003, and in particular, Plaintiff's claims arising from that fire under her insurance policy with Defendants, No. 0JA170-931592726-663 ("the Policy"). *See Exhibit 1* Affidavit. *See Exhibit 2* Complaint.

---

[1] As provided in Rule 12(b)(6), if matters outside the pleadings are presented and not excluded, the Court shall consider the motion as one for summary judgment. Defendant The Automobile Insurance Company of Hartford Connecticut has attached an affidavit certifying the attached policy is a true copy of the policy at issue. All other matters are from the pleadings.

[2] The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, and The Standard Fire Insurance Company are improperly named as defendants. The proper defendant in this matter is The Automobile Insurance Company of Hartford, Connecticut, an affiliate of The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Company, and The Standard Fire Insurance Company.

2.      Plaintiff initiated this action on January 18, 2007, in the Superior Court for the

District of Columbia (Case No. 0000356-07), which is over three years since the date of loss.

Defendants have timely removed this matter to this Court.  *See Exhibit 2* Complaint.

3.    The Policy contains an express suit limitations provision that provides as follows:

**7.**      **Suit Against Us.**  No action can be brought against us unless there has been
full compliance with all of the terms under Section I of this policy and the
action is started within two years after the date of loss.

4.    Under District of Columbia law suit limitations provisions are enforceable and do

not violate public policy.  Martinez v. Hartford Casualty Ins. Co., 429 F.Supp.2d 52 (D.D.C. 2006);

John Akridge Co. v. Travelers Co., 837 F.Supp. 6 (D. D.C. 1993); Centennial Ins. Co. v. Dowd's

Inc., 306 A.2d 648 (D.C. 1973); Roumel v. Niagara Fire Ins. Co., 225 A.2d 658 (D.C. 1967).  Since

there is no genuine dispute of material fact that Plaintiff failed to bring an action against the

Defendants within the two year suit limitations period, Defendants are entitled to judgment as a

matter of law.

WHEREFORE, Defendants, The St. Paul Travelers Companies, Inc., Travelers Property &

Casualty Insurance Company, The Standard Fire insurance Company, and The Automobile

Insurance Company of Hartford Connecticut respectfully requests that this Honorable Court grant

the motion to dismiss, or in the alternative summary judgment, in its favor.

Respectfully submitted,

Niles, Barton & Wilmer LLP

_____/s/_____
Craig D. Roswell, Bar Number:  433406
111 South Calvert Street, Suite 1400
Baltimore, MD 21202
410-783-6300
Facsimile 410-783-6363
cdroswell@niles-law.com
Attorneys for Defendants

## POINTS AND AUTHORITIES

FED. R. CIV. P. 12

FED. R. CIV. P. 56

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)

*Carter v. Greenspan,* 304 F.Supp.2d 13 (D.D.C.2004)

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)

*Centennial Ins. Co. v. Dowd's Inc.,* 306 A.2d 648 (D.C. 1973)

*Greene v. Dalton,* 164 F.3d 671 (D.C.Cir.1999)

*John Akridge Co. v. Travelers Co.,* 837 F.Supp. 6 (D. D.C. 1993)

*Martinez v. Hartford Casualty Ins. Co.*, 429 F.Supp.2d 52 (D.D.C. 2006)

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000)

*Ross v. DynCorp*, 2005 WL 736608 (D.D.C. 2005)

*Roumel v. Niagara Fire Ins. Co.,* 225 A.2d 658 (D.C. App. 1967)

*Washington Post Co. v. United States Dep't of Health & Human Servs.,* 865 F.2d 320 (D.C. Cir. 1989)

_____/s/_____
Craig D. Roswell

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of February 2007, a copy of the foregoing

Motion for Summary Judgment and the Supporting Memorandum of Law was served electronically

to:

Clark U. Fleckinger, II
Rockville Metro Plaza I
111 Rockville Pike, Suite 980
Rockville, MD 20850
*Attorneys for Plaintiffs*

_____/s/_____
Craig D. Roswell

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANJANIE PERSAUD                          *

    Plaintiff                            *

v.                                       *      **CASE NO: 07-CV-346**
                                                **Judge Richard W. Roberts**
THE ST. PAUL TRAVELERS                   *
COMPANIES, INC. et al.
                                         *

    Defendants
\*    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE,
## FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative FED. R. CIV. P. 56[1], Defendants,

The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, The

Standard Fire Insurance Company, and The Automobile Insurance Company of Hartford

Connecticut[2], through counsel, hereby submits this Memorandum of Law in Support of Defendants'

Motion to Dismiss, or in the alternative, Summary Judgment, and states as follows:

### Statement of Facts

This case arises from a fire at Plaintiff's property located at 760 Rock Creek Church Road,

NW, Washington, D.C. on July 5, 2003, in particular, Plaintiff's claims arising from that fire under

her insurance policy with Defendants, No. 0JA170-931592726-663 ("the Policy"). *See Exhibit 1*

---

[1] As provided in Rule 12(b)(6), if matters outside the pleadings are presented and not excluded, the Court shall consider the motion as one for summary judgment. Defendant The Automobile Insurance Company of Hartford Connecticut has attached an affidavit certifying the attached policy is a true copy of the policy at issue. All other matters are from the pleadings.

[2] The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, and The Standard Fire Insurance Company are improperly named as defendants. The proper defendant in this matter is The Automobile Insurance Company of Hartford, Connecticut, an affiliate of The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Company, and The Standard Fire Insurance Company.

Affidavit.  *See Exhibit 2* Complaint.  In her Complaint, Plaintiff contends the Defendants have breached the policy of insurance by not making payment.  *See Exhibit 2*.

The Policy contains an express suit limitations provision, which states as follows:

> **7.**    **Suit Against Us.**  No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

*See Exhibit 1* at p. 7 of 13.  Plaintiff's action is barred by this provision as Plaintiff waited well over two years to institute the suit against Defendants, and summary judgment is appropriate on that basis.

## <u>Legal Analysis</u>

### A.    Standard of Review.

Pursuant to FED. R. CIV. P. 56, "a court must grant summary judgment when the pleadings, affidavits, depositions, answers to interrogatories, and admissions of record demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."  *Ross v. DynCorp*, 2005 WL 736608, *4 -5 (D.D.C. 2005) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  Therefore, "the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *Ross*, 2005 WL 736608, *4 citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  If a Court determines that a reasonable jury could find in favor of the non-movant on the factual issue, a genuine dispute of material fact exists, and therefore, precludes summary judgment.  *Ross*, 2005 WL 736608, *4 citing *Anderson,* 477 U.S. at 248.  "However, even where a genuine issue exists as to some material fact, the movant is entitled to summary judgment against 'a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial.'"  *Ross*, 2005 WL 736608, *4 citing *Celotex,* 477 U.S. at 322.

Generally, "when adjudicating a motion for summary judgment, the Court must 'assume the truth of all statements proffered by the party opposing summary judgment' and construe all evidence in favor of the non-moving party." *Ross*, 2005 WL 736608, *5 citing *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999). *See Anderson,* 477 U.S. at 255; *Carter v. Greenspan,* 304 F.Supp.2d 13, 21 (D.D.C.2004). Thus, "the Court must 'draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Ross*, 2005 WL 736608, *5 citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). *See also Washington Post Co. v. United States Dep't of Health & Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989). However, "'wholly conclusory statements for which no supporting evidence is offered' need not be taken as true for summary judgment purposes." *Ross*, 2005 WL 736608, *5 citing *Carter,* 304 F.Supp.2d at 21 (citing *Greene,* 164 F.3d at 674-75).

**B.    Suit Limitations Provisions Are Enforceable under District of Columbia Law.**

It is well settled under District of Columbia law that suit limitations provisions are enforceable. *Centennial Ins. Co. v. Dowd's Inc.,* 306 A.2d 648 (D.C. 1973). In fact, the Court of Appeals for the District of Columbia explained that "[w]hile it is within the power of Congress to legislate in this area, it has not done so, and we see no basis for our invalidating such a contractual provision," especially when "[t]he possibility of fraudulent claims regrettably looms ever-present in the realities of the insurance industry." *Id.* at 651. *See also Roumel v. Niagara Fire Ins. Co.,* 225 A.2d 658 (D.C. App. 1967) (barring an insured's action based on the suit limitations provision where the insureds failed to bring an action until almost three years after the fire); *John Akridge Co. v. Travelers Co.,* 837 F.Supp. 6, 8 (D. D.C. 1993) (recognizing the validity of a two-year suit limitations provision in the District of Columbia, but denying the insurer's motion for summary judgment based on the suit limitations period after interpreting an endorsement attached the policy which extended

the limitations period consistent with Maryland law). In addition, the *Centennial* court analyzed a suit limitations provision, substantially similar to the provision in this case, which prohibited suits against the insurer unless the suit was initiated within twelve (12) months after the discovery of the occurrence, and found that it was "clearly defined, and avoids disputes as to when a claim may or may not have been 'denied.'" *Centennial,* 306 A.2d at 650, 652 n3. Thus, courts have consistently enforced suit limitations provisions contained in insurance policies. *See also Martinez v. Hartford Casualty Ins. Co.*, 429 F.Supp.2d 52 (2006)(The court granted summary judgment when plaintiff failed to file suit within the limitation period of the insurance policy.)

**C.      The Suit Limitations Period Expired Seventeen Months Before Plaintiff Initiated Her Action.**

In the present case, the suit limitations provision states:

**7.      Suit Against Us.**  No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

*See Exhibit 1* at p. 7 of 13. Thus, there is no dispute of material fact that the Plaintiff was required to institute a suit against the Defendants by July 5, 2005, since the date on which the direct physical loss or damage occurred, (date of loss), was July 5, 2003. *See Plaintiff's Complaint at ¶9, 10, and 15.* Instead, Plaintiff instituted this action on January 18, 2007. *See Exhibit 2.* Plaintiff has missed the contractual limitation period by approximately 18 months.

Similar to the *Roumel* case, there is no genuine dispute of material fact that the Plaintiff's action is barred in the present case. Like the insured in *Roumel,* the Plaintiff in the present case waited almost three years to institute a suit against Defendants resulting from the fire that caused the losses. *See Roumel,* 225 A.2d at 660. In addition, the provision in the present case is similar to the provision approved by the *Centennial* court as consistent with public policy. *See Exhibit 1* at p. 7 of 13; *Centennial,* 306 A.2d at 652. Despite a two year window, Plaintiff waited over three years to

4

file suit against her insurer.  Plaintiff's action is therefore untimely as a matter of law, and

Defendant's motion to dismiss, or in the alternative summary judgment, should be granted.

## Conclusion

Defendants respectfully requests that this Court grant Defendants' Motion to Dismiss, or in

the alternative Summary Judgment, in its favor.

Respectfully submitted,

Niles, Barton & Wilmer LLP

_____/s/_____
Craig D. Roswell
Bar Number:  433406
111 South Calvert Street, Suite 1400
Baltimore, MD 21202
410-783-6300
Facsimile 410-783-6363
cdroswell@niles-law.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANJANIE PERSAUD**                          *

    **Plaintiff**                          *

**v.**                                       *

                                                   **CASE NO: 07-CV-346**
                                                   **Judge Richard W. Roberts**

**THE ST. PAUL TRAVELERS**                   *
**COMPANIES, INC. et al.**
                                             *

    **Defendants**
*     *     *     *     *     *     *     *     *     *     *     *     *

## <u>AFFIDAVIT OF DAVID MCDONALD</u>

1.      My name is David McDonald.  I am over eighteen years of age. I am employed by The St. Paul Travelers Companies, Inc. as a claim representative.  I am authorized to give this affidavit on behalf of The Automobile Insurance Company of Hartford, Connecticut, an affiliate of The St. Paul Travelers Companies, Inc.

2.      On or about July 5, 2003, The Automobile Insurance Company of Hartford, Connecticut insured a property located at 760 Rock Creek Church Road, NW Washington D.C. under policy number 0JA170-931592726-663. (the "Policy")

3.      The Automobile Insurance Company of Hartford, Connecticut is the underwriting company for the Policy.  Attached to this affidavit is a copy of the Policy.

4.      The policy issued for this property is a Homesavers Policy, Rental-Owners Form 663.  Attached to this affidavit is a true and accurate copy of the applicable policy language for an HS 663 09 99.  (Exhibit 1)



5.    Defendants The St. Paul Travelers Insurance Company, Inc., Travelers Property & Casualty Insurance Company, and The Standard Fire Insurance Company are not the named insurers under the policy.

6.    On July 5, 2003, a fire occurred at 760 Rock Creek Church Road, NW Washington D.C.  A notice of claim was received by The Automobile Insurance Company of Hartford, Connecticut on July 7, 2003.

I, David McDonald, having been authorized to give this affidavit on behalf of The Automobile Insurance Company of Hartford Connecticut, solemnly affirm under the penalties of perjury, that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

David McDonald



ANJANIE PERSAUD
910 WEBSTER STREET NW
WASHINGTON DC 20011

Welcome to Travelers. We are very pleased that you have chosen to place your Homesaver insurance with us.

For over 125 years, Travelers has been striving to provide quality products and services - at a cost you can live with. Rest assured, in these rapidly changing times, you have someone working for you. That's your Travelers representative who is committed to providing you with the quality service you deserve. Today, more than ever, your satisfaction with our products and services is of the utmost importance to us.

We've prepared a package of materials especially for you which includes:

- your new policy;
- materials, if applicable, which are required in your state; and
- a brief policyholder guide to billing, claims and other services available to you.

We hope you will take a few minutes to review your policy materials, especially your Declarations page, which indicates the coverage and limits you have selected.

We would also like to remind you that whatever your insurance needs, Travelers and our insurance representative offer a full line of insurance products. If you have any questions, please do not hesitate to call FEINMAN HILLMAN & ASSOC at (301) 468-2555.



PL-10315     09-00

EXHIBIT

tabbies®

1

# Water

## Water

### Everywhere ...

## Am I protected from Flood?  PROBABLY NOT!

Flooding occurs in EVERY state!  Many people find out too late that they are at risk for flooding, and even worse that their property insurance doesn't cover flood damage.

- Your Homeowners policy DOES NOT cover flood loss to your home and contents.

- In certain areas, the chance of a flood loss is 25% greater than a loss due to a fire during a 30-year mortgage.

- Six out of every ten declared disasters involve flooding!

- Homes in areas where there is new construction or where there have been other events, such as forest fires, may be in greater danger than in the past because of changes to the land around them.

- 25% of all floods occur <u>outside</u> of a high-risk flood area.

- Federally backed mortgages in certain areas require flood insurance policies for the life of the mortgage.

To ensure that your property and belongings are protected, call your **independent insurance agent** at  (301) 468-2555.

Even if you already have a flood policy, you may want to discuss coverages with your agent to ensure that your policy is up to date.





PL-8206  Rev. 5-03

**Your privacy. . .**
**Is our concern**

- What we mean when we talk about "privacy".
- What kind of information we have, and where we get it.
- Who has access to this information?
- How to find out what information we have about you.
- When you write, what you should tell us.





PL-11109  Rev. 3-03

# Your privacy. . .
## Is our concern

## WHAT WE MEAN WHEN WE TALK ABOUT "PRIVACY"

Your privacy is important to us. When we sell an insurance policy to a person, we need information about the person or property that we're insuring. We consider this information private and have taken steps to protect its confidentiality.

We want you to know about our privacy policy. The privacy policy tells you the kinds of information we get about you, where we get it, and with whom, if anyone, we may share it.

This brochure describes our privacy policy, procedures and practices for individuals who seek or get automobile, homeowners and other personal liability and property insurance for personal, family or household needs.

## WHAT KIND OF INFORMATION WE HAVE AND WHERE WE GET IT

You give us most information we need in the application process. To make sure all this information is current and correct; we may need to check it with you by telephone or by mail.

You may be asked to give us more information in writing or over the phone. Plus, we may receive and check information on your past insurance claims from insurance support organizations or your former insurers.

As allowed by law, we may also ask for credit and other consumer reports from consumer reporting agencies about your application or renewal of insurance. Information given to us by an insurance support organization, including consumer reporting agencies may be kept by them and given to other persons.

For Auto Insurance, we often get a report of accidents or convictions from your State Motor Vehicle Department. We get these reports through an independent reporting company. We may also receive and check other information from government agencies or independent reporting companies to help us correctly rate and properly price your insurance risk.

On insurance for a home, a building, or a boat, we or an inspector from an independent reporting company may visit the property to inspect and report on its condition, and in some cases, take a picture of it. This allows us to check the estimate we have of your property's value. If we need more information about the property or the alarm you've installed, we may need to enter your property to finish the inspection. We would contact you before entering your property.

As a part of our underwriting process, in most states, we also get an Insurance Score based on credit history. We use the Insurance Score, information you give us and other consumer reports to determine your qualifications and the price we will charge for insurance.

Once you're insured with us, your file may also have information about your policy (ies) with us, including your bill payment history or the claims you have had with us. A claim representative may comment, for example, on the condition of the insured property, or let us know if there have been any changes in the way it's used. We may also keep a police report, if there was one about an accident.

Sometimes we need some information about your health– if, for example, we need to know whether a physical limitation will affect your ability to drive. We would ask you to sign a form allowing your personal doctor to give us written information about your health.

## WHO HAS ACCESS TO THIS INFORMATION

We will keep the information we collect about you in our files. Our policies and procedures protect your personal information in our files.

**We do not give or sell our customers' personal information to other companies for marketing reasons. You do not have to ask us to keep your information private because we do not give your information to others, unless allowed.**

PL-11109 Rev. 3-03

We will use information about you to sell you insurance, service your insurance and settle claims. We may give the information to other persons or companies to help us to manage or service our business. When we do, we make them use it only for the reasons we gave it to them.

We may give, without your past permission and only if allowed by law, information about you held in our files to certain persons or organizations such as:

- Your agent or broker
- Our affiliated property and casualty insurance companies
- An independent claim adjuster or investigator
- Persons or organizations that conduct scientific research, including actuarial or underwriting studies, provided that no individual may be identified in the studies
- An insurance support organization, including consumer reporting agencies
- Another insurer in order to prevent or prosecute fraud

Also, on rare occasions, we may be required to share this information:

- With a State Insurance Department or other governmental agency, if required by federal, state or local laws
- If ordered by a summons, court order, search warrant or subpoena
- To protect our own legal interests, or in case of suspected fraud or other illegal activities.

**HOW TO FIND OUT WHAT INFORMATION WE HAVE ABOUT YOU**

If you have any questions about the information we have in your file, please write to us at the address below. We will answer you within 30 business days of when we receive your request. When we receive your written request, we will let you know if we've given any information about you to anyone in the past. When we receive your written request, we will also tell you, if we asked for a consumer report, and if so, the name and address of the consumer reporting agency that gave the report to us.

If you want, you may also see and copy the information (except for certain documents about claims and lawsuits). If you believe any of our information is wrong, we'll check it out and if we agree there was an error, we'll correct it. If we don't agree, you're still allowed to file a letter with us disagreeing with the information. We'll send the correction or letter to anyone who received or will receive the original information.

If you have any questions about the right of access to or correction of your file, please contact us. We'll be happy to review our procedures with you.

**WHEN YOU WRITE, PLEASE BE SURE TO TELL US YOUR:**

- Name
- Address
- Policy number
- Phone number and the best time of the day for us to call you

Please enclose a copy (not the original) of some type of personal identification, such as your driver's license and send it to the following address:

**Privacy Coordinator**
KNOXVILLE - 411
PO BOX 59059
KNOXVILLE TN        37950

**WE THANK YOU FOR LETTING US SERVE YOUR INSURANCE NEEDS.**

This notice is given by The Travelers Indemnity Company, The Standard Fire Insurance Company and their property and casualty insurance affiliates, Hartford, CT 06183. This notice may be amended at any time.



PL-11109  Rev. 3-03

*A Simplified Look*
*At Your*
*Homesaver*
*Insurance Policy*

*from*



**FEINMAN HILLMAN & ASSOC**
**(301) 468-2555**

PL-7874  12-01

## Delivering on the Promise

When you buy insurance, you are buying promises --- a promise to pay your claims quickly and fairly, a promise to provide you with insurance coverages that fit your needs.

Since 1864, Travelers has staked its reputation on an absolute commitment to honor our promises. As one of the largest insurance companies in the country with over $50 billion in assets, Travelers has the financial strength to stand behind our promises and provide customer service that is second to none.

This commitment to our customers is shared by all the insurance professionals who represent Travelers. Each of our agents and company representatives meets the highest professional standards of insurance expertise and customer service. You can depend on them for peace of mind. You can depend on them to deliver on the promise.

## Making a Change to Your Policy

It is important that you keep your policy current. This means we need to know when you put an addition on your home or substantially add to the value of your belongings, when you refinance your home, and when you add a lienholder (for example, a second mortgagor). A telephone call to your Travelers agent or insurance representative is typically all it takes to make the change.

If you are interested in purchasing additional insurance products, such as automobile insurance, boat insurance, or insurance for an additional home, please call your agent or insurance representative. They will be glad to assist you.

## *Paying Your Premium*

If you have a mortgage, your policy premium may be paid directly by the bank or finance company holding the mortgage. The amount of the premium will be included in your mortgage payment, and the bank will send it directly to us.

Most customers receive a bill from Travelers about a month before their premium is due. You may pay this bill by check or money order. It is important that we receive your payment by the due date shown on the bill. Your due date is the same day each month.

Our bills are designed to make it easy for customers to choose a payment plan that fits their budget. Each bill states the amount of the premium due for the remaining policy period and the minimum amount needed to be paid prior to the due date on the bill. In most states you have the option of paying the entire balance, the "minimum due", or any amount in between.

If you do not pay the total premium at the beginning of the policy period, there will be an installment fee for each payment you make. This fee will be the same regardless of the amount of the policy's premium.

If you do not pay by the due date shown on the bill, we may issue you a nonpayment cancellation notice. We may also require that you pay the total account balance to keep your policy in force and not allow you to pay installments in the future.

## *Paying Your Claim*

Our professional claims representatives are dedicated to handling your claim promptly and fairly. They are full-time employees of Travelers, and they are experts.

If you do have a claim, please report it to us immediately. The telephone number for reporting claims is listed on the enclosed Policy Declarations. The sooner we hear from you, the sooner we can begin working on your behalf.

We can confirm for you, in almost every case, whether you are covered for the loss right over the telephone. In fact, we will try to handle as many claims as possible directly over the phone. For serious losses, a claim professional will be sent to your home to view and assess the damage as soon as possible. If we cannot come immediately, we may suggest that you make temporary repairs to protect your property from further damage. The cost of these repairs is covered under your policy.

When a major natural catastrophe such as a hurricane or tornado occurs, Travelers will send specially trained teams to the catastrophe area. We will set up a temporary claim office so that we can provide on-the-spot assistance to all our policyholders. Instructions for contacting the Travelers office will be advertised in your local newspaper.



PL-7874  Rev. 12-01

*Common Questions and Answers About Insurance*

**If the market value of my house or condo changes, should I adjust the amount of my coverage?**

Your policy covers you for damages to your home or condominium, other buildings on your property, and household furnishings. The limits you select for your policy should be sufficient to cover the cost of repairing or replacing all of these. While the market value of a home may be changing, the cost to repair or replace the home is based upon the cost of building materials and other construction costs. It is important to keep the limits of your policy up-to-date to reflect any inflation in these repair or replacement costs. Each year Travelers will notify you of the estimated inflation rates for the area in which your home is located, and will adjust your policy limits to help offset these increased costs so that your property can be kept fully protected.

**What should I do if I think there is fraud involved in a claim?**

If you think that any of the parties involved in a claim are falsifying services they performed or injuries they sustained, Travelers wants to know about it. We have a special toll-free FRAUD HOTLINE that you can call. The number is 1-800-6-FRAUD-0. Each year fraud adds billions to the cost of insurance countrywide. Help us fight fraud.

**Thank you for taking time to read this guide. If you have not already done so, please read the enclosed policy booklet as well. Should you have any questions about this policy or other insurance matters, please contact your Travelers agent or company representative at (301) 468-2555 .**

COVH44G93



*A Homesaver Policy Booklet*

*from Travelers*

*Especially for:*
**ANJANIE PERSAUD**



*Prepared by:*
**FEINMAN HILLMAN & ASSOC**



RENTAL DWELLING FORM 663

## The Contents of This Booklet

**1.    Your Declarations:**

A summary of your coverages, amounts of insurance, and premiums for those coverages under the policy.


**2.    The Travelers Homesaver Insurance Policy:**

The policy contract describing coverages, rights, and obligations.


**3.    Endorsements:**

Additional coverages or policy provisions applicable to your policy.


**4.    Important Notices:**

Information required by your state but not part of your policy provisions.


## Important Phone Numbers

**1.    For Policy Service:**

Call your Travelers representative.
(301) 468-2555


**2.    To Report a Claim:**

Call your Travelers agent or representative or the Travelers toll-free country-wide claim reporting service at 1-800-CLAIM-33(1-800-252-4633).

PL-7841  5-94

New Business
Declarations

**Travelers**™

# HOMESAVER POLICY

| **Named Insured** | **Your Agency's Name and Address** |
|---|---|
| ANJANIE PERSAUD<br>910 WEBSTER STREET NW<br>WASHINGTON DC 20011 | FEINMAN HILLMAN & ASSOC<br>131 ROLLINS AVE STE 4<br>ROCKVILLE, MD  20852 |

| **Your Policy Number:**   931592726 663 1 | **For Policy Service Call:** (301) 468-2555 |
|---|---|
| | **For Claim Service Call:** 1-800-CLAIM33 |

| **Policy Period** | **Location of Residence Premises** |
|---|---|
| FROM: 06-20-03 To: 06-20-04  12:01 A.M.<br>STANDARD TIME AT THE RESIDENCE PREMISES | 760 ROCK CREEK CHURCH RD NW<br>WASHINGTON, DC 200101617 |

| **Section I - Property Coverages** | **Limits of Liability** | **Premium** |
|---|---|---|
| A - Dwelling | $  350,000 | $  734.00 |
| B - Other Structures | 35,000 | INCL |
| C - Household Furnishings | 2,000 | INCL |
| D - Loss of Use | 35,000 | INCL |

| **Section II - Liability Coverages** | | |
|---|---|---|
| E - Premises Liability | $  500,000 | $  137.00 |
| F - Medical Payments | 1,000 | INCL |

### Policy Forms and Endorsements

| HS 663    09 99 | Rental Dwelling Form | |
|---|---|---|
| HS 01 08 10 02 | Special Provisions - District of Columbia | |
| HS 04 16 09 99 | Premises Alarm Or Fire Protection System | |
| HS 80 91 07 02 | Limited Fungi, Other Microbes or Rot Remediation | $   5,000 |

| **Total Premium** | $  871.00 |
|---|---|

### Your Premium Reflects the Following Credits or State Surcharges

| Premises Alarm System-Fire | 5.0% |
|---|---|

**Policy Deductible:** $   500.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated deductible is covered.



**Your Insurer:**  The Automobile Insurance Company of Hartford, Connecticut
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

## For Your Information

Thank you for insuring with Travelers. We appreciate your business. If you
have any questions about your insurance, please contact your agent or
representative.

These declarations are part of your Homesaver Insurance Policy, Rental
Dwelling Form 663. If a change number and effective date appear at the top
of this page, these Declarations replace any previous Declarations on that date.

Countersignature:

PL-8651 1-97    411/0JA170

## YOUR HOMESAVER POLICY QUICK REFERENCE

|  | DECLARATIONS PAGE | |
|---|---|---|
|  | Your Name | |
|  | Location of Residence Premises | |
|  | Policy Period | |
|  | Coverages | |
|  | Limits of Liability | |
|  | Deductible Amounts | |
|  | | Beginning On Page |
|  | AGREEMENT ............................................................................ | 1 |
|  | DEFINITIONS ............................................................................ | 1 |
| SECTION I PROPERTY COVERAGES | COVERAGE A - DWELLING ................................................ | 2 |
|  | COVERAGE B - OTHER STRUCTURES ............................. | 2 |
|  | COVERAGE C - HOUSEHOLD FURNISHINGS ................... | 2 |
|  | COVERAGE D - LOSS OF USE ......................................... | 2 |
|  | ADDITIONAL COVERAGES ............................................... | 2 |
|  | PERILS INSURED AGAINST ............................................. | 4 |
|  | EXCLUSIONS ................................................................... | 5 |
|  | LOSS DEDUCTIBLE .......................................................... | 6 |
|  | CONDITIONS .................................................................... | 6 |
|  | Your Duties After Loss ............................................. | 6 |
|  | Loss Settlement ........................................................ | 7 |
| SECTION II LIABILITY COVERAGES | COVERAGE E - PREMISES LIABILITY .............................. | 8 |
|  | COVERAGE F - MEDICAL PAYMENTS .............................. | 8 |
|  | ADDITIONAL COVERAGES ............................................... | 9 |
|  | EXCLUSIONS ................................................................... | 9 |
|  | CONDITIONS .................................................................... | 11 |
|  | Limit of Liability ........................................................ | 11 |
|  | Duties After Occurrence ........................................... | 11 |
| SECTIONS I AND II CONDITIONS | CONDITIONS .................................................................... | 12 |
|  | Policy Period ............................................................. | 12 |
|  | Cancellation ............................................................. | 12 |
|  | Nonrenewal .............................................................. | 13 |

HS 663 09 99

HS 663 09 99

## Homesaver Insurance Policy

### Rental Dwelling Form 663

---

### AGREEMENT

---

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

### DEFINITIONS

---

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" means liability for "bodily injury" or "property damage" arising out of the:

   a. Ownership of such vehicle or craft by an "insured";

   b. Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   c. Entrustment of such vehicle or craft by an "insured" to any person;

   d. Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; and

   e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   For the purpose of this definition:

   a. Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   b. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles; and

   c. Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

   d. Motor vehicle means a "motor vehicle" as defined in 7. Below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation.

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. The person or organization shown as the named "insured" on the Declarations; and

   b. Any person or organization while acting as real estate manager for you;

   Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means the "residence premises" shown in the Declarations.

7. "Motor vehicle" means:

   a. A self-propelled land or amphibious vehicle; or

   b. Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in:

a.  "Bodily injury"; or

b.  "Property damage".

9.  "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a.  An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means the one, two, three or four family dwelling shown as the "residence premises" in the Declarations.

"Residence premises" also means other structures and grounds at that location.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

1.  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2.  Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1.  Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

2.  From which any "business" is conducted.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - HOUSEHOLD FURNISHINGS

We cover your appliances, carpeting and other household furnishings in that part of the "residence premises" regularly rented or held for rental to any person other than an "insured".

### COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total limit for the two coverages that follow.

1.  **Fair Rental Value.** If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover its fair rental value. Fair rental value does not include any expenses that do not continue while that part of the "residence premises" rented to others or held for rental is not fit to live in.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

2.  **Civil Authority.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Fair Rental Value loss as provided under **1.** above for no more than two weeks.

The periods of time under **1.** and **2.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

### ADDITIONAL COVERAGES

1.  **Debris Removal.** We will pay your reasonable expense for the removal of:

    a.  Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

    b.  Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

    This expense is included in the limit of liability that applies to the damaged property. If the

amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

2. **Reasonable Repairs.** In the event that covered property is damaged by a Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by a Peril Insured Against.

This coverage does not:

a. Increase the limit of liability that applies to the covered property; or

b. Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION **2.c.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", or Vandalism or malicious mischief.

We will pay up to 5% of the limit of liability that applies to the dwelling, for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 90 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, of the type covered under this policy that is owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible per unit to the total amount of any one loss to the property described above, regardless of the number of assessments.

Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

This coverage is additional insurance.

7. **Glass or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because glass or safety glazing material has been broken, except as provided in **a.(2)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.



The most we will pay is $100 for any one loss regardless of the number of windows or other covered property involved in the loss.

This coverage does not increase the limit of liability that applies to the damaged property.

**8. Ordinance or Law.**

**a.** You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**9. Inflation Coverage.** We may adjust the limits of liability for Coverages A, B, C and D at the beginning of each successive policy term to reflect increases in the cost of insured property. The amount of such increase will be based on the data provided by the appraisal company shown in the Declarations. Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted limits.

We will also adjust the limits of liability at the time of a loss by the same percentage pro rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Coverage A during the policy period.

---

## SECTION I - PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A, B and C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion.**

**4. Riot or civil commotion.**

**5. Aircraft,** including self-propelled missiles and spacecraft.

**6. Vehicles.**

This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises".

**7. Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

9. **Vandalism or malicious mischief.**

This peril does not include loss:

a. By pilferage, theft, burglary or larceny, but we do cover damage to covered property caused by burglars; or

b. To property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

---

## SECTION I - EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion, **1.a.**, does not apply to the amount of coverage that may be provided for under Additional Coverage **8.** Ordinance or Law;

   b. The requirements of which result in a loss in value to property.

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement,** meaning:

   a. Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide; mudslide, or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature, unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

3. **Water Damage,** meaning:

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

   c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that Peril Insured Against.

5. **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   **c.** Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7.** **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

**8.** **Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no "insured" is entitled to coverage, regardless of whether that "insured"

committed or conspired to commit the act causing the loss.

**9.** **Governmental Action,** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

   This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

---

## LOSS DEDUCTIBLE

---

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I

- Property Coverages that exceeds the deductible amount shown in the Declarations.

---

## SECTION I - CONDITIONS

---

**1.** **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **a.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   **b.** For more than the applicable limit of liability.

**2.** **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy unless there has been full compliance with the duties noted below. These duties must be performed either by you or by an "insured" seeking coverage, if not you.

   **a.** Give prompt notice to us or our agent;

   **b.** Notify the police in case of loss by theft;

   **c.** Protect the property from further damage. If repairs to the property are required, you must:

     **(1)** Make reasonable and necessary repairs to protect the property; and

     **(2)** Keep an accurate record of repair expenses;

   **d.** Cooperate with us in the investigation of a claim;

   **e.** Prepare an inventory of damaged household furnishings showing the quantity, description,

actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **f.** As often as we reasonably require:

     **(1)** Show the damaged property;

     **(2)** Provide us with records and documents we request and permit us to make copies; and

     **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

   **g.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

     **(1)** The time and cause of loss;

     **(2)** The interest of all "insureds" and all others in the property involved and all liens on the property;

     **(3)** Other insurance which may cover the loss;

     **(4)** Changes in title or occupancy of the property during the term of the policy;

     **(5)** Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged household furnishings described in **2.e.** above; and

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

   **b.** Pay the difference between actual cash value of the property before and after the loss.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   **a.** Pay its own appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

6. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

   **a.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   **b.** A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is said to be insurance.

7. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy

and the action is started within two years after the date of loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   **a.** Reach an agreement with you;

   **b.** There is an entry of a final judgment; or

   **c.** There is a filing of an appraisal award with us.

10. **Abandonment of Property.** We need not accept any property abandoned by an "insured".

11. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive



a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Nuclear Hazard Clause.**

    **a.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    **b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

    **c.** This policy does not apply under Section I to loss caused directly or indirectly by nuclear

hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

14. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

15. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

16. **Concealment or Fraud.** With respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

    **a.** Intentionally concealed or misrepresented any material fact or circumstance;

    **b.** Engaged in fraudulent conduct; or

    **c.** Made false statements;

    relating to this insurance.

---

## SECTION II - LIABILITY COVERAGES

Section II of the policy is optional. It applies only if a premium for Coverage E is shown in the Declarations.

### COVERAGE E - PREMISES LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance, or use of the "insured location" and caused by an "occurrence", we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability is exhausted by the payment of settlements or judgments.

### COVERAGE F - MEDICAL PAYMENTS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury";

    **a.** Arises out of a condition on the "insured location" or the ways immediately adjoining; or

    **b.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS does not apply to this coverage.

## SECTION II - LIABILITY EXCLUSIONS

1. **Coverage E - Premises Liability and Coverage F - Medical Payments** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      However, this exclusion **1.a.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

   b. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion **1.b.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

This exclusion **1.b.** does not apply to the rental or holding for rental of any part of an "insured location";

c. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

d. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

e. Which arises out of the transmission of a communicable disease by an "insured";

f. Arising out of any written or oral statement made by you or others on your behalf which is material to any financial transaction.

2. **Coverage E - Premises Liability and Coverage F - Medical Payments** also do not apply to "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability".

Exclusions **1.c.** and **2.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

3. **Coverage E - Premises Liability,** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Additional Coverage **3.** Loss Assessment;

(2) Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **(1)** above or elsewhere in this policy;

b. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

c. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy issued by the:

(a) Nuclear Energy Liability Insurance Association;

(b) Mutual Atomic Energy Liability Underwriters;

(c) Nuclear Insurance Association of Canada;

or any of their successors; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability; or

f. "Bodily injury" to you or a regular resident of your household, other than a "residence employee".

4. **Coverage F - Medical Payments,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**b.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **(1)** Workers' compensation law;

    **(2)** Non-occupational disability law; or

    **(3)** Occupational disease law;

**c.** From any:

    **(1)** Nuclear reaction;

    **(2)** Nuclear radiation; or

    **(3)** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **(4)** Any consequence of any of these; or

**d.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

---

## SECTION II - CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

**2. Severability of Insurance.** This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**3. Duties After "Occurrence".** In case of an "occurrence", we have no duty to provide coverage under this policy unless you or another "insured" performs the duties noted below. You will help us by seeing that these duties are performed.

  **a.** Give written notice to us or our agent as soon as is practical, which sets forth:

    **(1)** The identity of the policy and the named "insured" shown in the Declarations;

    **(2)** Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

    **(3)** Names and addresses of any claimants and witnesses;

  **b.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

  **c.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

  **d.** At our request, help us:

    **(1)** To make settlement;

    **(2)** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    **(3)** With the conduct of suits and attend hearings and trials; and

    **(4)** To secure and give evidence and obtain the attendance of witnesses;

  **e.** Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

  **f.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**4. Duties of an Injured Person - Coverage F - Medical Payments.**

The injured person or someone acting for the injured person will:

  **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

  **b.** Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**5. Payment of Claim - Coverage F - Medical Payments.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this Section.

No one will have the right to join us as a party to any action against an "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Premises Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

---

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy form; or

   b. An amendatory endorsement

3. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (b) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is

HS 663 09 99

returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

6. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

7. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us. Subrogation does not apply under Section II to

Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. "Insured" includes:

      (1) An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

      (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



HS 663 09 99

HS 01 08 10 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS - DISTRICT OF COLUMBIA

### DEFINITIONS

The following definition is added:

**12.** "Fuel system" means:

   **a.** One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      **(1)** Are, or were, used to hold fuel; and

      **(2)** Are, or were, located on any one location;

   **b.** Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph **a.**;

   **c.** Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph **a.**;

   **d.** A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph **a.**;

   **e.** Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph **a.**; or

   **f.** A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph **a.**

A "fuel system" does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an "insured", used for powering the motor vehicle or watercraft and not used at any time or in any manner for "business".

### SECTION II - EXCLUSIONS

Under **1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others**, the following items are added:

• Or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

   **(1)** Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   **(2)** Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

   **(3)** Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

• Arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a "fuel system". This exclusion applies, but is not limited to:

   **(1)** Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   **(2)** Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

   **(3)** Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

(In forms **HS 663** and **HS 664**, the above exclusions are added under **1. Coverage E – Premises Liability and Coverage F – Medical Payments**.)

### SECTION II - CONDITIONS

**1. Limit of Liability**, is deleted and replaced by the following:

**1. Limit of Liability.**

   **a.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All



Page 1 of 2

"bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

**b. Sub-limit of Liability**

Subject to paragraph **a.** above, our total liability under Coverage E for damages for which an "insured" is legally liable because of vicarious liability, whether or not statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded, is $10,000. This sub-limit is within, but does not increase, the Coverage E Limit of Liability.

**c.** The limit of liability in **a.** above and sub-limit in **b.** above apply regardless of the number of "insureds", claims made or persons injured.

**d.** Our total liability under Coverage F for all medical expenses payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

## SECTIONS I AND II - CONDITIONS

**4. Cancellation**

Paragraph **b.** is deleted and replaced by the following:

**b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or

mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by letting you know at least 30 days before the date cancellation takes effect.

**(2)** When this policy has been in effect for more than 30 days or, or if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before the date cancellation takes effect:

**(a)** You have not paid a premium

**(b)** You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

**(c)** Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

**(d)** Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.

HS 80 91 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION
### For use with Forms HS 663 and HS 664

## DEFINITIONS

The following definition is added:

- "Fungi"

    **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

    **b.** Under Section II, this does not include any "fungi" that are, are on, or are contained in, a product or goods intended for consumption.

## SECTION I – PROPERTY COVERAGES
## COVERAGE D - LOSS OF USE

Paragraph **1.** is deleted and replaced by the following:

**1. Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

Payment will be for the shortest time required to repair or replace such premises. This period of time is not limited by expiration of this policy.

## ADDITIONAL COVERAGES

The following additional coverage is added:

- **Limited "Fungi", Other Microbes Or Remediation.**

    **a.** If a loss caused by a Peril Insured Against under Section I results in "fungi", other microbes or rot, we will pay for:

    **(1)** Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

    **(a)** Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

**(b)** Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

**(2)** Any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the "fungi", other microbes or rot makes the "residence premises" not fit to live in; and

**(3)** Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

**b.** We will pay under this additional coverage only if:

**(1)** The covered loss occurs during the policy period;

**(2)** All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

**(3)** We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

**c.** The most we will pay under this additional coverage is $  5,000  . This is the most we will pay for the total of all loss or costs regardless of the:

**(1)** Number of locations or items of property insured under this policy; or

**(2)** Number of losses or claims made.

**d.** This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

## SECTION I – EXCLUSIONS

The following exclusion is added:

**10. "Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion does not apply to



"fungi", other microbes or rot remediation coverage that may be afforded under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

## SECTION II – EXCLUSIONS

The following exclusion is added under item **1. Coverage E - Premises Liability and Coverage F - Medical Payments**:

g.  "Bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot. This includes:

   **(1)** The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

   **(2)** Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in **g.(1)** above;

   **(3)** Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

   **(4)** Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

All other provisions of this policy apply.

HS 04 16 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).



HS 04 16 09 99

Page 1 of 1

This policy is signed for the company which is the insurer under this policy.

James M. Michener
Secretary

Joseph Lacher
Chief Executive Officer
Personal Lines

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107  8-97

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

**ANJANIE PERSAUD**
910 Webster Street, N.W.
Washington, D.C. 20011

    Plaintiff

    v.

**THE ST. PAUL TRAVELERS**
**COMPANIES, INC.**
385 Washington Street
St. Paul. MN, 55102

Serve: Bruce Backberg
    (Senior Vice President and
    Corporate Secretary)
    385 Washington Street
    St. Paul. MN, 55102

            *and*

**TRAVELERS PROPERTY &**
**CASUALTY INSURANCE COMPANY**
151 Farmington Avenue
Hartford, CT, 06156

Serve: Corporation Service Company
    (Resident Agent)
    1090 Vermont Avenue, NW
    Suite # 430
    Washington, DC 20005

            *and*

0000356-07

Civil Action No.: _____

RECEIVED
CIVIL CLERK'S OFFICE
JAN 1 8 2007
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

CLARK U. FLECKINGER II
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P.C.
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850
301-294-7301
FAX 301-738-5708

1

EXHIBIT
2

**THE STANDARD FIRE INSURANCE
COMPANY**
151 Farmington Avenue
Hartford, CT, 06156                          :

Serve:  Corporation Service Company          :
       (Resident Agent)                     :
       1090 Vermont Avenue, NW             :
       Suite # 430                          :
       Washington, DC 20005                 :

          *and*                  :

**THE AUTOMOBILE INSURANCE
COMPANY OF HARTFORD,
CONNECTICUT**                                :
1 Tower Square
Hartford, CT 06183                           :

Serve:  CT Corporation System               :
       (Resident Agent)                     :
       1015 15th Street, NW                 :
       Suite # 1000                         :
       Washington, DC 20005                 :

    Defendants                               :

---

## COMPLAINT AND DEMAND FOR JURY TRIAL
### (Breach Of Contract)

    COMES NOW the Plaintiff, **ANJANIE PERSAUD,** by and through her attorney,

Clark U. Fleckinger II, and in support of her claim, represents as follows:

### JURISDICTION

    1.    That, the Court has jurisdiction over this matter pursuant to DC Code, §11-
921.

CLARK U. FLECKINGER II
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P.C.
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850
301-294-7301
FAX 301-738-5708

2

2.    That, Plaintiff is a resident of the District of Columbia

3.    That, to the best of Plaintiff's knowledge and belief, Defendant(s) is/are (a) corporation(s) operating and doing business in the District of Columbia.

## FACTS

4.    That, the allegations contained in the preceding and subsequent paragraphs of this Complaint are incorporated by reference.

5.    That, the Defendant(s) is/are in the business of selling insurance in, *inter alia,* the District of Columbia, including the selling of real property fire insurance in order to protect the financial interests of real property owners in the District of Columbia from the financial damages associated with the burning by fire of real property, its contents, and loss of use.

6.    That, at all times relevant, Plaintiff owned, and owns, real property at 760 Rock Creek Church Rd., NW, Washington, D.C.

7.    That, on or about June 20, 2003, Plaintiff contracted with, and did purchase from, Defendant(s) an insurance policy to protect Plaintiff from the financial damages associated with the destruction and/or loss of use by fire and burning of the aforesaid real property.

8.    That, pursuant thereto, and in consideration thereof, Plaintiff paid premiums to Defendant(s) for the benefits associated with the aforesaid insurance coverage.

9.    That, on or about July 5, 2003, Plaintiff's real property located at 760 Rock Creek Church Rd., NW, Washington, D.C. was the subject of a fire.

CLARK U. FLECKINGER II
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P.C.
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850

301-294-7301
FAX 301-738-5708

3

10.    That, as the result of the aforesaid fire of July 5, 2003, Plaintiff's real property was severely damaged as were the contents contained therein.

11.    That, as a result of the property damage as aforesaid, the Plaintiff was financially damaged as a result of the diminution of the value of the aforesaid property and the cost of repair.

12.    That, in addition, as a result of the aforesaid fire of July 5, 2003, Plaintiff lost the use of the aforesaid real property.

13.    That, as result of the loss of use as aforesaid, Plaintiff was financially damaged.

14.    That, pursuant to the damage sustained as a result of the aforesaid fire of July 5, 2003, Plaintiff notified Defendant(s) of such damage and that, pursuant to the contract of insurance between Plaintiff and Defendant(s), Defendant(s) was/were obligated to provide insurance coverage for the financial loss suffered by Plaintiff as a result of the fire.

15.    That, despite Plaintiff's demand therefore, Defendant(s) refused to comply with their obligation to insure Plaintiff, and to, thereby, compensate her for the financial loss associated with the damage to the real property at 760 Rock Creek Church Rd., NW, Washington, D.C., and the contents therein, as well as the loss of use of said property, which damages were caused by the aforesaid fire of July 5, 2003.

CLARK U. FLECKINGER II
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P.C
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850

301-294-7201
FAX. 301-738-5708

4

## COUNT I
### (Breach of Contract – All Defendants)

16.    That, the allegations contained in the preceding and subsequent Paragraphs are incorporated by reference.

17.    That, Defendant(s), jointly and severally, is/are in breach of its/their contractual obligation to provide insurance coverage to Plaintiff, and to compensate Plaintiff for, financial loss sustained as the result of a fire which burned the real property, and the contents therein, of Plaintiff.

18.    That, Plaintiff has suffered damages in the amount of $500,000.00 as the result of Defendant(s) breach of contract.

**WHEREFORE,** the premises above considered, Plaintiff demands:

A.    Judgment against Defendant(s), jointly and severally, in the amount of five hundred thousand dollars ($500,000.00) in compensatory damages;

B.    Such other damages as may be proven at trial;

C.    Plaintiff's attorney's fees and the costs of this action;

D.    Such other and further relief as this Honorable Court deems fair and just.

CLARK U. FLECKINGER II
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P C
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850

301-294-7301
FAX 301-738-5708

Respectfully Submitted,

Clark U. Fleckinger II
Attorney for Plaintiff
Rockville Metro Plaza I
111 Rockville Pike, Suite 980
Rockville, MD 20850
(301) 294-7301
DC Bar No. 362393

## **JURY DEMAND**

Plaintiff hereby demands a jury trial of 6 persons as to all issues involved.

Clark U. Fleckinger II

**CLARK U. FLECKINGER II**
ATTORNEY AT LAW
Of Counsel To Belli, Weil & Grozbean, P C
ROCKVILLE METRO PLAZA I
111 ROCKVILLE PIKE, SUITE 980
ROCKVILLE, MARYLAND 20850

301-294-7301
FAX 301-738-3708

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANJANIE PERSAUD** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CASE NO: 07-CV-346** |
| | | **Judge Richard W. Roberts** |
| **THE ST. PAUL TRAVELERS** | * | |
| **COMPANIES, INC. et al.** | | |
| | * | |
| **Defendants** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

After considering Defendants, The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, The Standard Fire insurance Company, and The Automobile Insurance Company of Hartford Connecticut [1] Motion for to Dismiss, or in the Alternative Summary Judgment, Memorandum of Law in Support of its motion, any memorandums of law opposing its motion, and oral arguments, if any, having been heard, it is this _____ day of _____, 2007,

ORDERED that Defendants Motion to Dismiss, or in the alternative for Summary Judgment, is GRANTED.

_____
Judge Richard W. Roberts
United States District Court for the District of Columbia

---

[1] The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Insurance Company, and The Standard Fire Insurance Company are improperly named as defendants. The proper defendant in this matter is The Automobile Insurance Company of Hartford, Connecticut, an affiliate of The St. Paul Travelers Companies, Inc., Travelers Property & Casualty Company, and The Standard Fire Insurance Company.